# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION – IN ADMIRALTY

MARKEL AMERICAN INSURANCE COMPANY,

    Plaintiff,

v.                                    CASE NO: 1:20-cv-21708

EVERGLADES NATURE TOURS, LLC;
MJ ATTONG a/k/a MERIJO LYNN ATTONG or
MERIJO LYNN GONZALEZ;
BLADES IN THE GLADES, LLC;
EVERGLADES ROAMER, LLC;
OSVALDO GONZALEZ, II;
LORENZO JOAQUIN VALDIVIA;
PAUL STUTO; LAURA STUTO; MICHAEL MARKS;
JAMES SLIVENSKI; JOHN BARRA; ROBERT DEUTSCH;
and RONNIE LOZARO RODRIGUEZ,

    Defendants.



## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, MARKEL AMERICAN INSURANCE COMPANY (hereinafter "Plaintiff" or "MAIC"), by and through its attorneys, Clausen Miller P.C., files this Complaint seeking a declaratory judgment that MAIC owes no obligation to defend or indemnify EVERGLADES NATURE TOURS, LLC ("ENT"), MJ ATTONG, also known as Merijo Lynn Attong or Merijo Lynn Gonzalez ("ATTONG"), BLADES IN THE GLADES, LLC ("BIG"), EVERGLADES ROAMER, LLC ("EVR"), OSVALDO GONZALEZ, II ("GONZALEZ") or LORENZO JOAQUIN VALDIVIA ("VALDIVIA") against any claims or lawsuits pursued against them by PAUL STUTO, LAURA STUTO (collectively, "STUTOS"), MICHAEL MARKS ("MARKS"), JAMES SLIVENSKI ("SLIVENSKI"),

1

JOHN BARRA ("BARRA") or ROBERT DEUTSCH ("DEUTSCH") or RONNIE LOZARO RODRIGUEZ ("RODRIGUEZ"). In support, MAIC states as follows:

## Parties, Jurisdiction & Venue

1. This is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §2201, to declare the rights and obligations of the parties under a policy of marine insurance in relation to an underlying boating incident and resulting bodily injury claims or lawsuits.

2. An actual controversy presently exists between MAIC and Defendants.

3. This action concerns a policy of marine insurance on a vessel, which is deemed a maritime contract, giving rise to admiralty and maritime jurisdiction in this Court under 28 U.S.C. §1333.

4. Pursuant to Rule 9(h) of Federal Rules of Civil Procedure, MAIC designates this claim as an admiralty or maritime claim within the Court's admiralty or maritime jurisdiction.

5. MAIC is a Virginia insurance company with its principal place of business in Virginia.

6. ENT is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida.

7. ATTONG is a member of ENT and a resident of Miami-Dade County, Florida.

8. BIG is a Florida limited liability company and member of ENT, with its principal place of business in Miami-Dade County, Florida.

9. EVR is a Florida limited liability company and member of ENT, with its principal place of business in Miami-Dade County, Florida.

6585230.1

10. GONZALEZ is a managing member of BIG and a resident of Miami-Dade County, Florida.

11. VALDIVIA is a resident of Miami-Dade County, Florida.

12. PAUL and LAURA STUTO are residents of Tennessee.

13. MARKS is a resident of New York.

14. SLIVENSKI is a resident of New Jersey.

15. BARRA is a resident of New Jersey.

16. DEUTSCH is a resident of California.

17. RODRIGUEZ is a resident of Florida.

18. STUTOS, MARKS, SLIVENSKI, BARRA, DEUTSCH and RODRIGUEZ were occupants in an airboat which was allegedly involved in an underlying boating incident in Miami-Dade County, Florida, which gives rise to the coverage issues in this lawsuit.

19. STUTOS, MARKS, SLIVENSKI, BARRA, and DEUTSCH ("CLAIMANTS") already submitted a claim to ENT, alleging injuries resulting from the boating incident in Miami-Dade County, Florida. (A true and accurate copy of correspondence from counsel for the CLAIMANTS, which includes the Boating Accident Report, is attached as group Exhibit A).

20. MAIC issued a policy of marine insurance to ENT and ATTONG, bearing Policy No. MTD00000418554, for the policy period from March 2, 2019 to March 2, 2020 ("MAIC Policy" or "Policy). A true and accurate copy of the MAIC Policy is attached as Exhibit B.

21. Counsel for the CLAIMANTS alleged that in the absence of insurance coverage, the CLAIMANTS will pursue a lawsuit against ENT which could put it out of

business, given the nature of the alleged injuries involved, which include but are not limited to sprains, contusions, a concussion/closed-head trauma, lower back injury, hamstring tear, shearing injury and other allegations involving the six CLAIMANTS. (A true and accurate copy of counsel's email to MAIC is attached as Exhibit C).

22. Venue is proper pursuant to 28 U.S.C. §1391.

### Underlying Boating Incident

23. On or about February 17, 2020, the CLAIMANTS and RODRIGUEZ were occupants in an airboat piloted by VALDIVIA as the captain, which was traveling in or near the Francis S. Taylor Wildlife Management Area in the Florida Everglades, when the airboat struck a patch of mud on the surface of the water causing it to drastically slow (the "Incident"). (Ex. A)

24. The Incident allegedly caused injuries to the passengers, some of which were ejected from the boat. *Id.*

25. VALDIVIA was cited for carelessly operating the airboat. *Id.*

26. CLAIMANTS assert that the airboat may have been overloaded and had improper weight distribution, in addition to allegations that VALDIVIA "negligently piloted" the boat, was speeding, fishtailing, had a lack of awareness of the water depth, and repeatedly admitted fault in connection with the Incident.

27. CLAIMANTS also assert that ENT is "one hundred percent directly responsible" for the alleged Incident, and resulting injuries and expenses.

28. In subsequent correspondence, counsel for CLAIMANTS detailed each of their respective alleged injuries to date, and further indicated that all CLAIMANTS are still receiving treatment for their alleged injuries. (Ex. C).

29. RODRIGUEZ did not report any initial injuries to the investigating officer, and he is not represented by the same attorney as the CLAIMANTS, but he is added as a party in the event he claims an injury or has an interest in the outcome of this matter.[1]

30. The vessel involved in the Incident, described as an 18 foot airboat, white and grey in color, with four rows of blue and red seats ("Involved Vessel"), was seized or confiscated by the Florida Fish and Wildlife Conservation Commission ("FWC"). A true and accurate copy of the FWC's Application for Ex-Parte Order Determining Probable Cause For Seizure filed February 27, 2020, along with the supporting Affidavit of the investigating officer is attached as Exhibit D.

31. While GONZALEZ apparently told investigators he owned the Involved Vessel, the investigators received conflicting information as to its title and registration. *Id.*

32. Since the Involved Vessel did not display a required hull identification number (HIN), and investigators could not tie it to any matching title or registration certificate provided, it was seized as contraband. *Id.*

## The MAIC Policy

33. The MAIC Policy was issued to ENT and ATTONG as the Named Insureds. (Ex. B).

34. The MAIC Policy includes but is not limited to Watercraft Liability coverage with limits of $300,000.00 per occurrence, and Medical Payments coverage with limits of $25,000.00 per occurrence, subject to the terms, provisions, conditions, exclusions and endorsements of the Policy. *Id.*

35. The MAIC Policy includes and is subject to the following terms:

---

[1] If RODRIGUEZ or any of the other CLAIMANTS agree to be bound by the Court's coverage determinations in this matter MAIC is willing to voluntarily dismiss him/them from this lawsuit.

6585230.1

## *THE MARKEL TRADESMAN POLICY*

## *INSURING AGREEMENT*

*In return for the premium payment and compliance with all applicable provisions of this policy and any endorsements, we agree to provide the insurance coverages as shown on the Declarations Page and any schedules, which are part of this policy.*

*By accepting this policy, you agree that the statements on the Declarations Page, any schedule and any application are your agreements and representations. This policy is issued in reliance upon the truth of your representations during the application process and it includes all agreements existing between you and us or any of our representatives.*

## *DEFINITIONS*

*Throughout this policy, most words and phrases that have special meanings appear in **bold**. Only the pronouns "we", "our", "us", "you", "your", and "yours" are defined, but do not appear in **bold**. This section defines some of the more general terms used in this policy. **Bold** terms that are not listed in this section, are defined in the sections they appear.*

1. *You and your mean the person(s) or organization(s) named on the Declarations Page as the 'Insured'.*

2. *We, our and us refer to the company, shown on the Declarations Page, which is providing this insurance.*

*. . .*

4. ***Bodily injury** means physical injury, sickness or disease sustained by a person including death resulting from any of these.*

*. . .*

7. ***Declared usage** means activities or operations essential to the type of business shown on the Declarations Page or Schedule Page as 'Declared Usage'.*

*. . .*

9. ***First named insured** means the named 'Insured' listed first on the Declarations Page.*

10. ***Insured vessel** means:*
    a. *the vessel as shown on the Declarations Page or Schedule Page, including its spars, sails, rigging, tackle, fittings, machinery and equipment necessary for the safe operation and maintenance of the vessel; or*
    b. *a **newly acquired vessel**.*

*. . .*

6

6585230.1

13. **Newly acquired vessel** *means a vessel that you acquire during the policy period that replaces an* **insured vessel** *shown on the Declarations Page or Schedule Page, which is similar to* **the insured vessel**(s) *described on the Declarations Page or Schedule Page. A* **newly acquired vessel** *also includes an additionally acquired vessel, which is similar to the* **insured vessel**(s) *described on the Declarations Page or Schedule Page that does not replace a vessel described on the Declarations Page or Schedule Page, provided we insure all other vessels that you own. The* **newly acquired vessel** *must exclusively be used for the* **declared usage**. *No coverage exists under any circumstance for vessels that are not similar to an* **insured vessel** *shown on the Declarations Page or Schedule Page, or is determined by us to be in an unseaworthy condition.*

    *If we determine the new vessel to be an acceptable risk, we will charge you additional premium and amend this policy or we will issue a new policy for your new vessel from the date you purchased the vessel, provided that you have notified us within 30 days following delivery and pay any additional premium required.*

    *A* **newly acquired vessel** *will have the same coverage we provide for vessels on the Declarations Page or Schedule Page with the same* **declared usage**. *The limit of insurance applicable to any* **newly acquired vessel** *for Hull Coverage will be the lesser of its* **actual cash value** *or your purchase price, but not more than 150% of the highest value shown on the Declarations Page or Schedule Page for one vessel.*

14. **Occurrence** *means a single event or an accident or series of accidents caused by a single event.*

    . . .

16. **Seaworthy** *means fit for the* **insured vessel's** *intended purpose.* **Seaworthy** *means the* **insured vessel** *and its equipment is well maintained and in good repair so that it cannot be damaged by ordinary weather or water conditions or the rigors of normal use.* **Seaworthy** *applies not only to the physical condition of the* **insured vessel**, *but to all its parts, equipment and gear, it also includes assignment of a suitable captain or crew.*

. . .

### WARRANTIES & CONDITIONS

1. Seaworthiness Warranties
   You warrant to us the following:

   . . .

   b. *It is warranted that the* **insured vessel** *shall be maintained in a* **seaworthy** *condition during the entire policy period. Violation of this warranty to maintain the* **insured vessel** *in a* **seaworthy** *condition will render coverage void for any damage or loss claimed under this policy where*

7

*such condition or conditions of unseaworthiness directly or indirectly caused or contributed to any damage or loss for which you make a claim.*

2. *Conditions*
   *If you violate any of the following conditions, coverage will be suspended until you are no longer in violation:*

   *. . .*

   b. *You possess all required federal, state and local permits and licenses for the **declared usage**.*
   c. *The maximum number of passengers aboard the **insured vessel** shall not exceed the lesser of:*

   *. . .*

   iii. *The limit for passengers as shown on the Schedule Page.*

   *. . .*

4. *Misrepresentation or Fraud*
   *All insurance provided by this policy shall be null and void if you, at any time, including renewal(s), either intentionally conceal or misrepresent any fact, regardless of materiality, or if you misrepresent or conceal any material fact regardless of intent. Any and all changes in any fact(s) or circumstance(s) material to our acceptance of this risk arising during the term of this policy and/or any renewal(s) must be disclosed to us as soon as possible, and any failure to make such disclosure during the term of the policy shall also render this policy null and void. No action or inaction by us shall be deemed a waiver of this provision.*

   *. . .*

7. *Policy Changes*
   *No change or waiver may be effected in this policy except by endorsement issued by us. If a premium adjustment is necessary, we will make the adjustment as of the effective date of the change.*

   *When we broaden coverage during the policy period, without charge, the policy will automatically provide the broadened coverage.*

   *. . .*

9. *No Benefits to Others*
   *No person or organization which has custody of the **insured vessel**, and is not an **insured**, will benefit from this insurance.*

10. *Transfer of Interest*
    *All coverage will cease without further notice to you or to your representative(s) in the event of any sale, transfer, mortgage, pledge, change in legal interest or ownership over the:*
    a. ***insured vessel;***

    *. . .*

12. *Claim or Suit Against You*
    *You must immediately notify us and send us every demand notice, summons or other legal papers received by you or your representative, if a claim is made*

8

6585230.1

> or a suit is brought against you for liability that is covered under this policy. We will pay the ensuing cost of the suit have the sole right to control the defense of the suit. We also have the option of naming attorneys to represent you in the suit.
>
> 13. General Duties Following a Loss
>    In the event of any loss which may be covered by this Policy, you or any 'Loss Payee' making a claim must:
>    a. Give us immediate notice of any accident, loss, damage, or expense that may be covered under this policy. The notice should state with respect to the incident:
>       i. where, when and how it occurred;
>       ii. the property concerned;
>       iii. the extent of injuries or damages involved; and
>       iv. names and addresses of injured or damaged parties and all witnesses.
>    b. Not assume any obligation, admit any liability or incur any expense for which we may be liable without our written permission…
>    . . .
>    If you do not comply with these general duties, then no coverage for the loss will be provided.
>
> 14. Other Insurance
>    This policy is excess over any other valid and collectible insurance.
>    . . .
> ### GENERAL EXCLUSIONS
> 3. The lawful or unlawful capture, seizure, requisition or detainment of your **insured vessel** by a civil authority or any attempt at any of these.
>    . . .
> 6. Willful or intentional misconduct or criminal act on the part of any **insured** or during any illegal activity on the part of any **insured.**
>
>
> ### WATERCRAFT LIABILITY
> Coverage
> We will cover damages for **bodily injury** or **property damage** for which an insured becomes legally liable through ownership, maintenance, or use of the **insured vessel** arising from the **declared usage**.
>    . . .
> What We Pay
> We will pay no more than the limit for "Watercraft Liability" shown on the Declarations Page for all damages or losses resulting from any **occurrence**. This is the most we will pay, regardless of the number of persons covered under this section, claims made, watercraft or premiums shown on the Declarations Page or Schedule Page, or the number of watercraft involved.
>    . . .
> Exclusions
> We will not pay for:

9

6585230.1

1) *any fine or civil or criminal penalty assessed by any civil or governmental authority;*

2) *liability assumed under any contract or agreement;*

. . .

*16) punitive or exemplary damages or associated interest.*

*Defense*
*We have the right and duty to defend any suit to which this insurance applies.*

. . .

*Charter-Captained Usage Endorsement*

. . .

**DEFINITIONS** *is amended by adding the following:*

**Charter-Captained** *means that the* **insured vessel** *will be used to take passengers for hire on pleasure trips or excursions. It also includes pleasure use by the* **first named insured** *or anyone using the* **insured vessel** *for pleasure use with permission from the* **first named insured.**

**DEFINITIONS** *is amended by adding the following:*
**Insured** *means you or your employees, including captain or crew.*

. . .

**WARRANTIES AND CONDITIONS,** *2. Conditions, c., item iii. is deleted in its entirety and replaced by the following:*

iii. *The limit for passengers as shown on the Schedule Page when the* **insured vessel** *is used for taking passengers for hire on pleasure trips or excursions..*

. . .

*NAMED CAPTAIN OR SKIPPER ENDORSEMENT*

. . .

**Usage ID**          Charter-Captained -1
**Named Captain**     STEVEN R CAVES, JR.

**WARRANTIES AND CONDITIONS,** *2. Conditions is amended by adding the following item:*

\*    *The person scheduled above must be in command and control of the* **insured vessel** *at all times.*
*All other terms, conditions, and limitations of the policy remain unchanged.*

. . .

*MEDICAL PAYMENTS COVERAGE ENDORSEMENT*

. . .

*Coverage*
  *We will cover the reasonable charges for necessary medical, surgical, x-ray, dental, ambulance, hospital and professional nursing services and funeral*

>   *expenses incurred within one year from the date of an accident causing **bodily injury** to any person while in, upon, boarding or leaving an **insured vessel**.*
>
>   . . .

*Id.*

36.     The only vessel scheduled on the MAIC Policy was a 2010 Homebuilt, identified as being 16 feet in length, bearing HIN FLZCV217A010, and which was scheduled with a maximum of seven (7) passengers. *Id.*

37.     MAIC did not receive notice that ENT or ATTONG purchased any "newly acquired vessels" during the policy period, and MAIC was not notified of the acquisition of any other vessels by ENT or ATTONG within 30 days following delivery of a vessel.

38.     During its claims investigation, MAIC requested the title, registration and bill of sale for the Involved Vessel from ENT and ATTONG and, in response, was provided certain documentation identifying a 15'11'' 2020 JFV airboat with HIN FLZFY043J920.

39.     MAIC did not receive any request to add a vessel bearing HIN FLZFY043J920 to the MAIC Policy.

40.     MAIC did not receive any request to add an 18 foot vessel to the MAIC Policy.

41.     There was no additional premium paid relative to any vessels other than the scheduled 2010 Homebuilt vessel under the MAIC Policy.

42.     The only Named Captain listed under the MAIC Policy at the time of the Incident was Steven R. Caves, Jr. (Ex. B).

43.     MAIC never approved of VALDIVIA as a Named Captain and never agreed to add him or list him as an approved Named Captain under the MAIC Policy.

44.     Prior to issuance of the MAIC Policy, ATTONG executed an Airboat Charter Release Acknowledgment agreeing that ENT would have all participants read and sign a provided Markel Airboat Charter release prior to anyone boarding or participating on any

insured vessel, and would keep the signed release on file for a minimum of seven (7) years. A true and accurate copy of the agreement is attached as Exhibit E.

45. Upon information and belief, ENT did not require CLAIMANTS or RODRIGUEZ to read and sign the Markel Airboat Charter release before they boarded the Involved Vessel, and ENT did not provide MAIC with any executed releases or waivers from CLAIMANTS or RODRIGUEZ in relation to this matter, despite requests for same from MAIC.

46. MAIC first received notice of the Incident on or about March 10, 2020, through counsel representing ENT, ATTONG, GONZALEZ and VALDIVIA. (Ex. A)

47. MAIC issued a reservation of all rights on or about March 27, 2020. A true and accurate copy of MAIC's reservation of rights letter is attached as Exhibit F.

48. After further investigation, MAIC issued a coverage denial on or about April 23, 2020. A true and accurate copy of MAIC's coverage denial letter is attached as Exhibit G.

## COUNT I: Declaratory Relief

49. MAIC repeats each and every allegation contained in those paragraphs of the Complaint numbered "1" through "48," as if more fully set forth herein.

50. BIG, EVR, GONZALEZ and/or VALDIVIA are not entitled to coverage under the MAIC Policy to the extent they do not qualify as "insureds" under the MAIC Policy.

51. Watercraft Liability Coverage does not apply under the MAIC Policy unless an insured becomes legally liable for damages for **bodily injury** through ownership, maintenance, or use of an **insured vessel** arising from **declared usage**.

52. Medical Payments coverage only applies with respect to certain expenses associated with **bodily injury** to persons "while in, upon, boarding or leaving an **insured vessel.**"

53. The Watercraft Liability and the Medical Payments coverages under the MAIC Policy only apply in relation to an **insured vessel** as that term is defined within the Policy.

54. The Involved Vessel was not an **insured vessel** under the MAIC Policy at the time of the Incident or otherwise.

55. The Involved Vessel was not a "newly acquired vessel" or "additionally acquired vessel" as those terms are used or defined in the MAIC Policy.

56. The MAIC Policy required as a condition precedent to any potential coverage that the Named Captain, Steven R. Caves, Jr., be in command and control of the **insured vessel** at all times.

57. The Involved Vessel was captained by VALDIVIA at the time of the Incident.

58. VALDIVIA was never approved as a Named Captain under the MAIC Policy.

59. Upon information and belief, VALDIVIA did not meet the Florida statutory requirements necessary to captain or operate an airboat carrying passengers for hire on Florida state waters at the time of the Incident.

60. Upon information and belief, VALDIVIA did not complete a boater education course, was not licensed by the United States Coast Guard to serve as a master of a vessel, did not successfully complete an FWC-approved airboat operator course that meets the minimum standards established by FWC rule and/or did not have proof of same on board the Involved Vessel at the time of the Incident.

61. The MAIC Policy included a warranty by ENT and ATTONG that the **insured vessel** shall be maintained in a **seaworthy** condition during the entire policy period.

62. The Involved Vessel was not maintained in a **seaworthy** condition at the time of the Incident as the term **seaworthy** is defined in the MAIC Policy, because (among other potential issues) the Involved Vessel was operated by VALDIVIA, who as not a suitable captain for that vessel.

63. The MAIC Policy required as a condition precedent to any potential coverage that ENT or ATTONG possess all required federal, state and local permits and licenses for the **declared usage** as that term is defined in the MAIC Policy.

64. ENT and ATTONG did not possess all required federal, state and local permits and licenses for the use of the Involved Vessel.

65. The MAIC Policy required as a condition precedent to any potential coverage that the maximum number of passengers in an **insured vessel** not exceed seven (7).

66. Upon information and belief, there were more than seven (7) passengers aboard the Involved Vessel at the time of the Incident.

67. The MAIC Policy does not extend to any person or organization in custody of an **insured vessel** who is not an **insured** under the MAIC Policy as that term is defined.

68. The MAIC Policy requires that ENT, ATTONG or any "Loss Payee" making a claim must provide immediate notice to MAIC of any accident, loss, damage or expense that may be covered under the Policy.

69. The MAIC Policy required that neither ENT, ATTONG nor any "Loss Payee" assume any obligation, admit any liability or incur any expense for which MAIC may be liable without MAIC's written permission.

70. MAIC did not receive immediate notice of the Incident, and it did not receive required information associated with the Incident from ENT or ATTONG.

71. MAIC did not provide written permission for any assumed obligations, liability or expenses in connection with this matter.

72. All coverage under the MAIC Policy ceased without further notice in the event of any sale, transfer, mortgage, pledge, change in legal interest or ownership over the **insured vessel**, policy, or the legal entity or organization named as the "insured" in the Policy.

73. MAIG required, and ENT and ATTONG warranted and agreed to have all participants read and sign a provided Markel Airboat Charter release prior to anyone boarding or participating on any **insured vessel.**

74. ENT and ATTONG did not obtain signed Markel Airboat Charter releases from the CLAIMANTS or passengers on the Involved Vessel at the time of the Incident.

75. ENT and ATTONG breached various warranties relating to the MAIC Policy.

76. ENT and ATTONG breached various conditions precedent to coverage under the MAIC Policy.

77. MAIC was prejudiced by ENT's and ATTONG's breach of the MAIC Policy warranties and conditions.

78. The MAIC Policy does not require MAIC to defend a claim or suit to which the insurance does not apply.

79. The MAIC Policy does not apply or provide any coverage in relation to the Incident.

## COUNT II: Alternative Declaratory Relief

80. MAIC repeats each and every allegation contained in those paragraphs of the Complaint numbered "1" through "79," as if more fully set forth herein.

81. In the alternative, any potential coverage under the MAIC Policy excludes any fine or civil or criminal penalties assessed by any civil or governmental authority.

82. In the alternative, any potential coverage under the MAIC Policy excludes any liability assumed under any contract or agreement.

83. In the alternative, any potential coverage under the MAIC Policy excludes punitive or exemplary damages or associated interest.

84. In the alternative, any potential coverage under the MAIC Policy excludes coverage for the lawful or unlawful capture, seizure, requisition or detainment of an **insured vessel** by a civil authority or any attempt at any of these.

85. In the alternative, any potential coverage under the MAIC Policy excludes coverage for willful or intentional misconduct or criminal act on the part of any insured or during any illegal activity on the part of any insured.

86. In the alternative, any potential coverage under the MAIC Policy is excess of any other valid and collectible insurance.

87. In the alternative, any potential coverage for Watercraft Liability under the Policy is limited to a total of $300,000.00 in relation to the Incident.

88. In the alternative, any potential coverage for Medical Payments under the Policy is limited to $25,000.00 in relation to the Incident, and is also subject to all terms, provisions and exclusions within the Medical Payments Coverage Endorsement.

89. In the alternative, any potential coverage under the Policy is rendered null and void if ENT or ATTONG misrepresented or concealed any facts in its communications with MAIC.

90. In the alternative, any potential coverage under the Policy is null and void to the extent the damage or loss claimed was caused directly or indirectly by the unseaworthiness of an **insured vessel**.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff requests that this Honorable Court enter a judgment in its favor, finding and adjudicating that:

(a) MAIC owes no obligation to defend ENT, ATTONG, BIG, EVR, GONZALEZ, VALDIVIA or any other person or entity in connection with any claim or suit relating to the Incident under the MAIC Policy;

(b) MAIC owes no obligation to indemnify ENT, ATTONG, BIG, EVR, GONZALEZ, VALDIVIA or any other person or entity in connection with any claim or suit relating to the Incident under the MAIC Policy;

(c) MAIC owes no obligations to the CLAIMANTS in connection with the Incident under the MAIC Policy or otherwise;

(d) MAIC is awarded such other and further relief as the Court deems just and proper.

Dated: April 23, 2020.

Respectfully submitted,

**CLAUSEN MILLER, P.C.**
4830 West Kennedy Blvd., Suite 600
Tampa, Florida 33609
Telephone (813) 519-1028

BY: /s/ Anne Kevlin
    ANNE KEVLIN
    Florida Bar No. 930970
    akevlin@clausen.com
    NICHOLAS W. TRAVIS
    Florida Bar No. 116594
    ntravis@clausen.com

    MICHELLE R. VALENCIC
    Illinois Bar No. 6244041
    Co-Counsel
    (pending *pro hac vice* admission)
    mvalencic@clausen.com
    **CLAUSEN MILLER, P.C.**
    10 South LaSalle Street, Suite 1600
    Chicago, Illinois 60603
    Telephone (312) 855-1010
    Facsimile (312) 606-7777